UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL ANTHONY ABELS,     )
    )
          Petitioner,     )      CASE NO.  C04-2259-JLR-MJB
    )
    v.     )
    )      REPORT AND
ISRB et al.,     )      RECOMMENDATION
    )
          Respondents.     )
_____ )

## I.  INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Michael Abels is incarcerated at the McNeil Island Corrections Center where he is under the jurisdiction of the Indeterminate Sentence Review Board ("ISRB" or "Board") pursuant to his state court conviction of first degree murder while armed with a deadly weapon and a firearm.  He has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2241.  Petitioner does not challenge his underlying conviction. Rather, he challenges the legality of his custody based on actions by the ISRB and the Department of Corrections (DOC) in setting his minimum term, implementing his Mutual Agreement Program (MAP),[1] accounting for his accrual of good time, and

---

[1]A Mutual Agreement Program (MAP) is a transition release plan developed by corrections staff for an offender convicted of Murder First Degree or a selected offender requiring structured community re-entry.  (Dkt. #22, Ex. 38 at Ex. 21 - DOC Policy 350.300.)

1   terminating his MAP and disciplining him without a disciplinary hearing.  The Court,

2   having reviewed the record in its entirety, concludes that no evidentiary hearing is

3   necessary and recommends that petitioner's federal habeas petition should be DENIED

4   and this action should be dismissed with prejudice.

5                    II.  FACTUAL AND PROCEDURAL BACKGROUND

6           In March 1982, Petitioner was convicted of first degree murder while armed with a

7   deadly weapon and a firearm,[2] and he was sentenced to a term of not more than life in

8   prison.  (Dkt. #22, Ex. 1.)  He was committed to the Department of Corrections on March

9   24, 1982.  (*Id.* at Ex. 3.)

10  A.      ISRB and DOC actions

11          In December 1990, the ISRB set Petitioner's minimum term at 276 months, which

12  was approximately the middle of the adjusted Sentencing Reform Act (SRA) guideline

13  range of 236-316 months.[3]  (Dkt. #22, Ex. 4.)  In June 1995, a Board panel found

14  Petitioner conditionally parolable, required that a MAP be submitted, and strongly

15  recommended that the Board meet with Petitioner after he successfully completed the

16  MAP.  (Dkt. #22, Ex. 5.)

17  _____

18      [2]Petitioner was 17 when the crime was committed, and the victim was the ex-boyfriend of
    his girlfriend, who was accused of assaulting the girlfriend.  (*See* Dkt. #22, Ex. 5.)  The juvenile
19  court declined jurisdiction and Petitioner was tried as an adult.  (*Id.* at Ex. 4.)

20      [3]In 1989, the Washington legislature passed Substitute House Bill ("SHB") 1457, which
21  required the Board to "fix the duration of confinement for persons committed to the custody of
    the department of corrections under a mandatory life sentence, for crimes committed before July
22  1, 1994.  *See* Wash. Rev. Code §§ 9.95.009, .116.  Under this statute, the Board must attempt to
    determine the minimum term an inmate must serve with reference to Washington's Sentencing
23  Reform Act, and the Board must attempt to follow the minimum term recommendations of the
    sentencing judge and the prosecuting attorney.  Wash. Rev. Code §§ 9.94A.010 *et seq.*; §
24  9.95.009(2).  Once an inmate serves the minimum term, that inmate must be considered for parole
    at the expiration of that term.  *Powell v. Ducharme*, 998 F.2d 710, 712 (9th Cir. 1993).
25
    REPORT AND RECOMMENDATION
26  Page - 2

On November 14, 1995, the full Board found Petitioner not parolable due to his refusal to participate in development of a MAP plan.  (Dkt. #22, Ex. 6.)  In March 1997, the full Board again found Petitioner not parolable and added 24 months to his minimum term.  (Dkt. #22, Ex. 7.)

In a review hearing on April 6, 1999, the Board found Petitioner conditionally parolable upon his successful completion of a MAP and required submission of a MAP.  (Dkt. #22, Ex. 8.)  In a continuance of that hearing, the Board determined that it needed to have a firm diagnosis/evaluation from a medical professional because the record contained some indication that Petitioner had previously been diagnosed as having a bipolar disorder, and the MAP committee had refused to approve Petitioner's MAP because he was refusing medication and treatment.  (Dkt. #22, Ex. 9.)

In November 2000, the Board reaffirmed its April 1999 decision, finding Petitioner conditionally parolable via successful completion of a MAP.  The Board  also requested that the matter be referred to the MAP screening committee at DOC headquarters as soon as possible.  (Dkt. #22, Ex. 10.)

In March 2001, Petitioner was moved from WSR to MCC-MSU to begin his MAP.  (Dkt #22, Ex. 11 at 2.)  However, on March 29, 2001, Petitioner was placed in administrative segregation after a report from a counselor that Petitioner had been in the counselor's office ranting and raving for approximately thirty minutes that:  he was not being treated fairly because he could not work outside of the fenced perimeter; that given the opportunity, he would take off; and that he would rob or kill dope dealers to get money and then take off.  (Dkt. #22, Ex. 12, 13.)  This incident caused Petitioner's termination from his MAP.  On April 2, 2001, a decision was made to continue

REPORT AND RECOMMENDATION
Page - 3

1   Petitioner's administrative segregation due to his threat to others, threat to self, and threat

2   to the orderliness of the facility.  (Dkt. #22, Ex. 14.)

3          In June 2001, the DOC referred Petitioner to the ISRB for another parolability

4   hearing.  (Dkt. #22, Ex. 15 & 16.)  Expressing concern over Petitioner's ability to control

5   his behavior in the community due to his immaturity and lack of impulse control in an

6   institutional setting, the full Board found him not parolable on November 5, 2001.  (*Id.* at

7   Ex. 11.)   The Board also added 66 months to Petitioner's minimum term due to his

8   current PERD (Parole Eligibility Review Date), which was January 1999.  *Id.*  The Board

9   expressed an intent to see Petitioner again in approximately one year.  *Id.*

10          In October 2002, the full Board conducted a .100 hearing in which it found

11   Petitioner conditionally parolable to a MAP and, for the purpose of accomplishing a long

12   MAP, added 60 months to his minimum term.  (Dkt. #22, Ex. 17.)  The Board indicated

13   that the MAP should include, but is not limited to: nine to 18 months in a minimum

14   security facility; six to nine months in pre-release; and at least six months in work release

15   (if screened and found eligible).  *Id.*  The Board also noted its expectation that Petitioner

16   would maintain infraction free behavior and participate in all programs outlined in the

17   MAP contract.  *Id.*

18          In January 2003, Petitioner was found guilty in a disciplinary hearing of violating

19   infraction rule 659, sexual harassment, based on actions described in a written infraction

20   report from a female staff member and based on testimony.  (Dkt. #22, Ex. 18, 19.)  He

21   was sentenced to fifteen days disciplinary segregation.  (Dkt. #22, Ex. 19, 20.)  In a June

22   2003 hearing, the Board continued to find Petitioner conditionally parolable via MAP

23   transitioning.  The Board indicated that Petitioner must not have any additional

24   infractions and that any noncompliance or infractions by Petitioner should be reported to

25

26   REPORT AND RECOMMENDATION
     Page - 4

the Board as soon as possible.  (Dkt. #22, Ex. #21.)  The Board also noted that it would schedule a .100 hearing upon completion of his MAP and before any release to the community.  *Id.*

B.    Development of Petitioner's MAP

In November 2003, Lisa Howe, a DOC classification counselor assigned to Petitioner for approximately three months, entered a notation in Petitioner's offender chronological notes that she was working on his MAP plan.  (Dkt. #22, Ex. 22 at 1.)  The plan was for Petitioner to (1) stay at the Washington State Penitentiary (WSP) Minimum Security Unit for 9-18 months; (2) stay at Pine Lodge Pre-Release (PLPR) for a period of 6-9 months; and (3) stay at Lincoln Park Work Training Release for a period of 6 months. *Id.* at Ex. 22, 23.  WSP accepted Petitioner; but PLPR was not accepting any further male offenders and Lincoln Park Work Training Release was not willing to approve him unless the Headquarters Community Screening Committee (HCSC) approved.  (Dkt. #22, Ex 22 at 2.)

Howe indicates that the mental health professionals at DOC subsequently changed Petitioner's mental health code, determining that he no longer needed a psychiatric code. However, Seattle Work Release refused to accept Petitioner, stating that he still needed to be placed in a facility for mentally ill offenders due to his long mental health history.  *Id.* Howe also states that the Lincoln Park RAP House would not accept Petitioner without a change in the mental health code to reflect the need for mental health treatment.  As a result, the progress of developing Petitioner's MAP was delayed for several months.  *Id.* Howe also notes that she was present when Petitioner became extremely upset in December 2003 with the delay in approval of his MAP.

REPORT AND RECOMMENDATION
Page - 5

1    On February 6, 2004, another classification counselor submitted Petitioner's MAP

2    to HCSC for consideration and approval.  (Dkt. #22, Ex. 22, 24.)  The proposed MAP

3    plan indicated that Petitioner had been tentatively accepted for placement at WSP/MSU

4    and PLPR/Tacoma Pre-Release, but the work release portion had been denied.  (Dkt. #22,

5    Ex. 24.)  The HCSC approved Petitioner's MAP on February 19, 2004.  (Dkt. #22, Ex.

6    25.)

7    C.    State Court Procedural History

8          1.    First PRP

9          On December 23, 2002, Petitioner filed a Personal Restraint Petition (PRP) in the

10   Washington Court of Appeals, Div. I.  (Dkt. #22, Ex. 26.)  He claimed deliberate

11   indifference in violation of his equal protection, due process, and Eighth Amendment

12   rights as a result of: 1)  the ISRB's action of extending his minimum term by 126 months

13   based on allegations of a DOC staff member who never submitted an infraction report;

14   and 2) DOC's action of placing him in isolation for 23 days and in a closed custody

15   facility for 20 months without giving him an infraction and a disciplinary hearing.  *Id.*

16   The ISRB and DOC filed a response in opposition (Dkt. #22, Ex. 27), and Petitioner filed

17   a reply (Dkt. #22, Ex. 28).  The Acting Chief Judge dismissed the PRP., finding that

18   Petitioner had not established a violation of his constitutional rights.  (Dkt. #22, Ex. 29.)

19         In September 2003, Petitioner filed a motion for discretionary review in the

20   Washington State Supreme Court claiming that: 1) the Board violated his due process and

21   equal protection rights by having him wait 22-months "off the clock" without earning any

22   good time credits while his MAP was being developed; 2) he was denied due process

23   when the Board relied on false evidence and information in his file in determining his

24   parolability and setting his minimum term; 3) his MAP was terminated and he is being

25

26   REPORT AND RECOMMENDATION
     Page - 6

punished by the ISRB and DOC based on comments that were never substantiated; and 4)

if the Board has the authority to sentence him to the punishment of the SEA, then he

should be allowed the liberties of the SEA as well.  (Dkt. #22, Ex. 30.)   In October 2003,

the supreme court issued a ruling requiring the DOC to file a response addressing the

issue of good time.  (Dkt. #22, Ex. 31.)  After the DOC and ISRB filed a supplemental

response (Dkt. #22, Ex 32), the supreme court's Commissioner denied the motion for

discretionary review, finding that the DOC had sufficiently accounted for Petitioner's

good time credits, and Petitioner had cited no authority suggesting that prison

misbehavior must be proven in a disciplinary hearing before the Board may consider it in

a parole decision.  (Dkt. #22, Ex. 33 at 3.)  Petitioner filed a motion to modify the

Commissioner's ruling, which the supreme court denied without comment.  (Dkt. #22,

Ex. 35.)  The court of appeals issued a certificate of finality on February 23, 2004.  (Dkt.

#22, Ex. 26.)

       2.     Second PRP

       Petitioner filed a second PRP on January 2, 2004, claiming cruel and unusual

punishment in violation of the Eighth Amendment due to the delay by the ISRB and DOC

in developing his MAP and due to alleged threats by DOC staff in response to grievances

he filed concerning the MAP issue.  (Dkt. #22, Ex. 37.)  DOC filed a response to the PRP

(Dkt. #22, Ex. 38) and Petitioner filed a reply (Dkt. #22, Ex. 39).  Finding no merit in any

of Petitioner's claims, the Acting Chief Judge of the court of appeals dismissed the PRP.

under RAP 16.11(b) on August 23, 2004.  (Dkt. #22, Ex. 40.)  The court issued a

certificate of finality on October 14, 2004.  (Dkt. #22, Ex. 41.)

D.     <u>Federal Court Procedural History</u>

       In November 2004, Petitioner filed a petition for writ of habeas corpus pursuant to

REPORT AND RECOMMENDATION
Page - 7

28 U.S.C. § 2241 in this Court.  (Dkt. #5.)  After this Court identified certain deficiencies in the petition and granted him leave to amend, Petitioner filed an amended § 2241 petition on January 21, 2005.  (Dkt. #7.)  Respondent filed an answer, along with relevant portions of the state court record, urging the Court to determine that the habeas petition was a "mixed petition" because it contained both exhausted and unexhausted claims.[4] (Dkt. #20.)  Petitioner filed a response. (Dkt. #24.)

On April 24, 2006, having determined that Petitioner's habeas petition was a mixed petition, this Court directed him to: a) amend the petition to delete the unexhausted claim and inform the Court whether he wished to proceed with his exhausted claims, or b) stay the petition to allow for exhaustion of the unexhausted claim in state court and later add it by amendment to the stayed petition.  (Dkt. #31.)  After expressing his desire to proceed with the exhausted claims (Dkt. #32) and after receiving a single extension of time, Petitioner filed a second amended § 2241 petition containing only his exhausted claims.  (Dkt. #41.)

## III.  GROUNDS FOR REVIEW

Petitioner's § habeas petition sets forth the following grounds for relief:

1. The ISRB violated its own policies and procedures by (a) failing to set petitioner's new minimum term from April 1999 to December 2001, and (b) delaying 22 months from April 1999, to February 2000 before starting petitioner's MAP which denied petitioner the benefit of his good time for the period April 1999 to December 2001.

2. Petitioner's due process, equal protection, and eighth amendment rights were violated when the ISRB terminated his MAP based on unsubstantiated allegations from his DOC counselor without any disciplinary hearing process.

---

[4]Respondent's answer also addressed the merits of Petitioner's exhausted claims. (*See* Dkt. #20 at 24-35.)

REPORT AND RECOMMENDATION
Page - 8

3.      Petitioner was denied due process and equal protection by DOC when it disciplined him without giving him a disciplinary hearing and the ISRB relied on false allegations of a DOC staff member to determine petitioner's parolability.

(Dkt. #41 at 3.)  Respondents concede that petitioner exhausted these claims in the state courts.[5]

## IV.  STANDARD FOR REVIEW

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the State court proceeding.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id.* at 413.

In *Lockyer v. Andrade*, 528 U.S. 63 (2003), the Supreme Court examined the

---

[5]Petitioner's instant claims are identical to claims 1, 3, and 4 in his first amended habeas petition, which Respondents conceded had been fully and fairly exhausted to the Washington Supreme Court.  (*See* Dkt. #20 at 13.)

REPORT AND RECOMMENDATION
Page - 9

meaning of the phrase "unreasonable application of law" and corrected an earlier

interpretation by the Ninth Circuit which had equated the term with the phrase "clear

error."  The Court explained:

> These two standards, however, are not the same.  *The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness.  It is not enough that a federal habeas court, in its "independent review of the legal question" is left with a "firm conviction" that the state court was "erroneous."* . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable.

*Id.* at 75-76 (emphasis added) (citations omitted).

Additionally, if a habeas petitioner challenges the determination of a factual issue

by a State court, such determination is presumed correct, and the applicant has the burden

of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C.

§ 2254(e)(1).

## V.  DISCUSSION

A.    Cognizable Habeas Claims

As a preliminary matter, Respondents argue that Petitioner's grounds for relief

concern solely conditions of confinement and are not cognizable in a federal habeas

corpus petition.  (Dkt. #20 at 24.)  When a state prisoner challenges the legality of his

custody and the relief he seeks is a determination that he is entitled to an earlier or

immediate release, the prisoner's sole federal remedy is a petition for a writ of habeas

corpus.  *See Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439

(1973); see also *Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir. 1997).

Although, the relief sought by Petitioner is credit for his time served and

immediate parole without parole stipulations (Dkt. #41 at 7), this Court concludes that

REPORT AND RECOMMENDATION
Page - 10

1    Petitioner's third claim, that he was denied due process and equal protection when DOC

2    disciplined him without giving him a disciplinary hearing, concerns a condition of

3    confinement rather than the legality of his custody.  *See Clutchette v. Procunier*, 497 F.2d

4    809, 813-14 (9th Cir. 1974) (holding that the speculative and incidental effect of prison

5    disciplinary procedures on the duration of plaintiffs' sentences was not sufficient to bring

6    action within 'core' of habeas corpus), *modified*, 510 F.2d 613 (9th Cir. 1975), *rev'd on*

7    *different grounds sub nom. Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47

8    L.Ed.2d 810 (1976).  However, Petitioner's first and second claims challenge the alleged

9    denial of his good time credits for a certain period and unconstitutional termination of his

10   MAP due to unsubstantiated allegations, respectively.  (Dkt. #41 at 3.)  Because any loss

11   of good time credits or termination of Petitioner's MAP would have direct impact on his

12   release date, Petitioner's first two grounds for relief implicate the validity of the duration

13   of Petitioner's confinement.  Thus, this Court concludes that Petitioner's first and second

14   grounds for relief are cognizable in this federal habeas petition.

15   B.    Ground 1:  Loss of Credits

16        Petitioner argues that he was unlawfully denied the benefit of his good time credits

17   from April 1999 to December 2001 because the ISRB violated its policies and procedures

18   by (a) failing to set a new minimum term for him during that time period, and (b)

19   delaying 22 months before starting his MAP.  Respondent contends that Petitioner has

20   received the benefit of all good time credits due, and thus his claim is meritless.

21        Inmates do not have an inherent federal constitutional interest in amassing good

22   time credits or earning early release.  *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct.

23   2963, 41 L.Ed.2d 935 (1974).  However, a liberty interest may also be created by state

24   law.  *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 774 L.Ed.2d 675 (1983);

25

26   REPORT AND RECOMMENDATION
     Page - 11

1   *Toussaint v. McCarthy*, 801 F.3d 1080, 1089 (9th Cir. 1986), *cert. denied*, 481 U.S.

2   1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987).  To create such an interest, there must be

3   relevant, mandatory language that explicitly directs a decisionmaker that if specific

4   substantive predicates are present, a particular outcome must follow.  *Kentucky Dep't of*

5   *Corrections v. Thompson*, 490 U.S. 454, 461-63, 109 S.Ct. 1904, 1909-10, 104 L.Ed.2d

6   506 (1989).  Under Washington law, inmates have a protected liberty interest in the

7   accrual of good time.  *In re Marler*, 108 Wash. App. 799, 811, 33 P.3d 743, 748 (2001),

8   (citing Wash. Rev. Code § 9.95.070[6]; *In re Personal Restraint of Mota*, 114 Wash.2d

9   465, 474, 788 P.2d 538 (1990)).

10          Here, Petitioner contends that "ISRB policies state that a prisoner's minimum term

11  shall be set within 30 days after it expires, and once a prisoner is found parolable, DOC

12  and ISRB have 90 days to get that prisoner out of his present institution and on his MAP

13  in a minimum security facility."[7]  (Dkt. #41 at 3.)  He argues that he went 29 months

14  without a minimum term and 22 months waiting for a MAP after he was found parolable,

15  during which time he was completely "off the clock" and not earning any good time

16  credit.  (*Id.* at 3, 8.)

17          In evaluating this claim, the Commissioner noted *Marler's* holding that "the Board

18  must account for an inmate's good time credits during the preparation and

19  implementation of a MAP, since such credits if earned, affect the date of the next parole

20  review hearing."  Dkt. #22, Ex. 33 at 2 (citing *In re Marler*, 108 Wash. App. at 811, 33

21  ───────────────

22          [6]Prisoners may receive up to a one-third reduction in the length of their sentence for good
    behavior.  *See* Wash. Rev. Code §§ 9.95.070, 9.95.110 (2003).

23          [7]DOC Policy Number 350.300 provides, in relevant part, that "[t]he Mutual Agreement

24  Program will be finalized an resubmitted to HCSC within 90 days after receiving notice of
    parolability and/or determinate release by HCSC."  (*See* Dkt. #22, Ex. 38 at Ex. 21.)

25
    REPORT AND RECOMMENDATION
26  Page - 12

P.3d 743)).  Applying this holding, the state supreme court Commissioner concluded:

> [I] am satisfied that the Department has sufficiently accounted for Mr.
> Abels's good time credits. (internal footnote omitted) Although the Board,
> in November 2001, added 66 months to Mr. Abels's minimum term as of
> June 1999, it held its next parole review hearing in October 2002, only 40
> months into the extended minimum term.  The Department thus properly
> accounted for good time credits.

(Ex. 33 at 3.)

In this case, it is undisputed that there was a period between April 1999 and November 2000, prior to the *Marler* decision in 2001, during which Petitioner was "off the clock" and not accruing good time credits while his MAP was delayed for various reasons.  *See* Dkt. #22, Ex. 32 - Aff. of Jody Swails, Supplemental Ex. 1 at 2.   However, good time credit applies only to the Board's minimum sentence, not to the court's maximum sentence.  Its effect is to accelerate the date for parole eligibility review.[8] Petitioner was apparently granted the benefit of a one-third reduction of his minimum term for good time credit when the Board held his next parole review hearing in October 2002, after approximately two-thirds (40 months) of the 66-month extension of his minimum term as of June 1999 had lapsed.  Accordingly, the state supreme court's adjudication of this claim regarding loss of good time credits was not contrary to, or an unreasonable application of, clearly established federal law, and petitioner is not entitled to federal habeas relief on this ground.

C.   Ground 2: Termination of MAP

Petitioner argues that his due process, equal protection, and Eighth Amendment rights were violated when the ISRB terminated his MAP based on unsubstantiated

---

[8]An inmate is eligible for parole upon serving the minimum term minus any good time credit earned.  Wash. Rev. Code § 9.95.100 (1993).

REPORT AND RECOMMENDATION
Page - 13

1   allegations from his DOC counselor without any disciplinary hearing process.  By

2   requesting the relief of credit for time served and immediate parole, Petitioner impliedly

3   contends that ISRB's use of the counselor's allegations as a basis for terminating his

4   MAP deprived him of a protected liberty interest.  However, this contention is without

5   merit.

6         A prisoner has no constitutional or inherent right to be conditionally released

7   before the expiration of a valid sentence.  *Greenholtz v. Inmates of Nebraska Penal and*

8   *Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Bermudez v.*

9   *Duenas*, 936 F.2d 1064, 1067 (9th Cir. 1991).  A state statute may create an expectation

10  of parole so that the statute creates a liberty interest protected by the due process clause.

11  *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987); *Bermudez*, 936 F2d. at 1067.

12        Under Washington law, even though an inmate is eligible for parole, the "board

13  shall not, however, until his or her maximum term expires, release a prisoner, unless in its

14  opinion his or her rehabilitation has been complete and he or she is a fit subject for

15  release."  Wash. Rev. Code § 9.95.110.  Thus, parole is not a right, but a privilege

16  conferred as an act of administrative grace, and rests exclusively within the discretion of

17  the Board.  *In re Personal Restraint of Haynes*, 100 Wash. App. 366, 372, 996 P.2d 637

18  (2000).  Any fact or consideration demonstrating that an inmate is not a fit subject for

19  release is a sufficient reason to deny parole.  *Id.* at 371, 996 P.2d at 641.  The Board

20  applies this law equally to all indeterminately sentenced inmates.

21        Accordingly, because the Board's decisions regarding parolability are not guided

22  by substantive limitations on the Board's discretion, Petitioner's claim regarding the

23  Board's termination of his MAP based on its consideration of unsubstantiated allegations

24  by a DOC counselor, does not involve a protected liberty interest.  Therefore, Petitioner

25

26  REPORT AND RECOMMENDATION
    Page - 14

1    is not entitled to federal habeas relief under this claim.

2                                    VI.  CONCLUSION

3           For the reasons set forth above, this Court recommends that Petitioner's federal

4    habeas petition be denied, and that this action be dismissed with prejudice.  A proposed

5    order accompanies this Report and Recommendation.

6           DATED this 28th day of December, 2006.

7

8

9    _____

10   MONICA J. BENTON
     United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   REPORT AND RECOMMENDATION
     Page - 15